Anthony T. LEE et al., Plaintiffs,

UNITED STATES of America, Plaintiff-Intervenor and Amicus Curiae,

National Education Association, Inc., Plaintiff-Intervenor,

v.

MACON COUNTY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 604–E.

United States District Court, M. D. Alabama, E. D.

Aug. 14, 1970.

See also D.C., 267 F.Supp. 458.

Solomon S. Seay, and Fred D. Gray, of Gray, Seay & Langford, Montgomery, Ala., for plaintiffs and plaintiff-intervenor, National Education Ass'n., Inc.

Jerris Leonard, Asst. Atty. Gen., Civil Rights Division, U.S. Department of Justice, Craig M. Crenshaw, Jr., Attorney, Civil Rights Division, U.S. Department of Justice, Washington, D. C., and Ira DeMent, U. S. Atty., Montgomery, Ala., for the United States.

MacDonald Gallion, Atty. Gen. for State of Ala., Gordon Madison, Asst. Atty. Gen. for State of Ala., and Thomas W. Thagard, Jr., Smith Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for Alabama State Board of Education, its members, and State Superintendent of Education.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

## MEMORANDUM OPINION

### PER CURIAM.

In the order of this Court made and entered in this case March 22, 1967, 267 F.Supp. 458, 484, after making appropriate findings of fact and conclusions of law relative to the operation of the trade schools and junior colleges in the State of Alabama by the Alabama State Board of Education, this Court stated:

*Institutions Under State Board of Education Control*

No person shall be denied admission to any trade school, junior college, or state college administered by the Alabama State Board of Education upon the ground of race, nor shall he be subjected to racial discrimination in connection with his application for enrollment in or his attendance at any such trade school, junior college, or state college. Dual attendance zones based on race for such trade schools, junior colleges, and state colleges shall be abolished. The State Department of Education shall direct such trade schools, junior colleges, and state colleges to recruit, hire, and assign teachers so as to desegregate faculty and to accomplish some faculty desegregation in each such trade school, junior college, and state college by September 1967.

On April 30, 1969, the United States, as the plaintiff-intervenor in this case, filed a formal motion asking this Court to require the defendants the Alabama State Board of Education, its members, and the State Superintendent of Education to formulate and execute a plan

for the desegregation of the state-established dual systems of trade schools and junior colleges and further asking this Court to require the formulation of unitary, nonracially identifiable systems of trade schools and junior colleges. Upon this motion this Court ordered the defendants to prepare a plan for achieving full and immediate compliance with this Court's order of March 22, 1967, and to prepare a plan setting forth further steps necessary to accomplish the complete disestablishment of the dual systems of trade schools and junior colleges based on race; defendants were directed to file such plans with this Court on or before May 20, 1969. The matter was set for a hearing on May 27, 1969. As directed, the defendants filed proposed plans. Upon consideration of the defendants' proposed plans and the objections of the United States thereto, this Court determined that the plans as advanced by the defendants when implemented would only partially abolish the dual attendance areas based upon race. Furthermore, the plans continued to provide for separate transportation areas based upon race; they did not provide for any separate student recruiting areas. The plans were lacking in specificity as to when faculties and student bodies would be desegregated so that the racial identifiability of the institutions involved would be eliminated. No justification for the continuance of the duplication of programs and of curricula in the same geographical areas was advanced by the defendants in their proposed plans and the plans did not specify how future construction, or the expansion of facilities, or changes in programs or curricula would be used in the desegregation process.

At the conclusion of the hearing on this phase of this case on May 27, 1969, counsel for the defendants were advised in open court that their plans for desegregating the trade schools and junior colleges administered by the Alabama State Board of Education were deficient. They were advised further that the Alabama State Board of Education, in order to discharge the duty that the law places upon it and that this Court ordered in March 1967 would be required to abolish all the dual attendance areas for the trade schools and junior colleges to the extent that these areas might be based upon race, to abolish the separate transportation areas, to provide specifically for faculty desegregation so that the racial identifiability of these institutions, insofar as faculty is concerned, would be eliminated, and to eliminate the duplication of programs and of curricula in those institutions where similar institutions were located in the geographical areas. Counsel for the parties requested additional time to study these problems further, to make another attempt to formulate more specific plans.

On September 17, 1969, this Court ordered the United States through its Office of Education, Department of Health, Education and Welfare, to formulate and submit to the Court a plan for desegregating the trade schools and junior colleges operated by the State of Alabama and administered by the Alabama State Board of Education, said plan to be designed to desegregate said institutions not later than September 1970. The defendant members of the Alabama State Board of Education and the State Superintendent of Education were directed to cooperate fully with the representatives of the United States Office of Education and to make available all information and records in their possession necessary to the development of the plan ordered prepared. This Court granted the Alabama State Board of Education thirty days from the date of the submission of said plan by the United States Office of Education within which to submit alternative plans. On March 3, 1970, the United States through its Office of Education submitted its proposed plan, and on July 16, 1970, the defendants submitted their proposed alternative plan.

Now, upon this submission, this Court finds that the State of Alabama operates 27 trade schools and 17 junior colleges located throughout the State. Each of

these institutions is administered by the Alabama State Board of Education. Only three of the junior colleges have dormitories and only a small percentage of students use them. The junior colleges were designed to be, and they are, commuter-type colleges. Although there is no policy restriction placed on admission with regard to residence, there is a practical restriction by reason of the location of these junior colleges. To aid in the "commuter concept", the defendants have provided free transportation to each of these institutions. The portion of students transported to these schools varies considerably. Based upon a report filed with this Court in October, 1968, the number and percentage of students transported to fourteen of these junior colleges was:

| School | Enrollment | Transported | Percentage |
|---|---|---|---|
| Calhoun | 1612 | 616 | 38% |
| Jefferson State | 4343 | 471 | 10% |
| Mobile | 906 | 77 | 08% |
| Northwest | 618 | 144 | 21% |
| Wallace | 724 | 222 | 30% |
| Wenonah | 752 | 95 | 12% |
| Faulkner (formerly Yancey) | 1350 | 314 | 23% |
| Gadsden | 2352 | 185 | 08% |
| Snead | 629 | 52 | 08% |
| Southern Union | 535 | 55 | 10% |
| Northeast | 638 | 256 | 40% |
| Patrick Henry | 462 | 140 | 30% |
| Enterprise | 926 | 151 | 16% |
| Jefferson Davis | 547 | 112 | 20% |

Two of the 17 junior colleges were established as "Negro" institutions; these are Mobile State and Wenonah State. There have been varying degrees of progress in attracting Negro students to the predominantly "white" junior colleges. There has been no progress, however, and there is no likelihood of progress, in desegregating the two "Negro" junior colleges. Predominantly white junior colleges located near these Negro colleges received more funds; for instance, there is a significant disparity in this area between James H. Faulkner Junior College (formerly Yancey State), a predominantly white college, and Mobile State, located within 35 miles of each other. In the past two school years the funds allocated per student for these institutions were:

| | Faulkner | Mobile |
|---|---|---|
| 1967–68 | $1,057.90 | $857.80 |
| 1968–69 | 974.00 | 684.00 |

The disparity in funding has also resulted in the predominantly white junior colleges offering a wider variety of courses than is offered in Negro junior colleges. The Jefferson State Junior College, a predominantly white institution, and Wenonah State, an all-Negro institution, are both located in Jefferson County. Jefferson State has 164 white teachers and one Negro teacher; Wenonah has one white teacher and 37 Negro teachers. The funds appropriated for these two institutions for the 1968–69 school year were $1,466,393 for Jefferson State and $330,711 for Wenonah. The evidence reflects that the plans for the future are not designed to effectively desegregate or to abolish the racial identifiability of either of these schools.

Of the 27 trade schools administered by the Alabama State Board of Education, 21 are traditionally and predominantly white; six are all-Negro. The cities of Mobile, Tuscaloosa, Montgomery, Birmingham and Gadsden have two trade schools each—one for whites and one for blacks. The most recent enrollment and faculty figures that have been made available to this Court reflect the enrollment and faculty at these institutions to be:

| | Enrollment | | Faculty | |
|---|---|---|---|---|
| Gadsden | White | Negro | White | Negro |
| Alabama School of Trades | 461 | 12 | 36 | 0 |
| Gadsden State | 16 | 130 | 1 | 14 |
| Birmingham | | | | |
| Bessemer State | 268 | 112 | 31 | 1 |
| Wenonah State | 1 | 268 | 1 | 22 |
| Tuscaloosa | | | | |
| Shelton State | 304 | 21 | 25 | 1 |
| Tuscaloosa | 0 | 181 | 0 | 14 |
| Montgomery | | | | |
| Patterson | 279 | 31 | 28 | 1 |
| Trenholm | 0 | 302 | 2 | 18 |
| Mobile | | | | |
| Southwest | 466 | 37 | 35 | 1 |
| Carver | 0 | 239 | 4 | 14 |

Furthermore, there is a traditionally white trade school located in Decatur and, 35 miles away, a traditionally Negro trade school located in Huntsville. The latest enrollment and faculty figures for these two schools are:

|  | Enrollment | | Faculty | |
|---|---|---|---|---|
|  | White | Negro | White | Negro |
| John C. Calhoun, Decatur | 484 | 45 | 39 | 1 |
| J. F. Drake, Huntsville | 87 | 239 | 7 | 32 |

Each trade school has been assigned a geographical attendance area. Although there is no official policy limiting the students to the trade school in their area, bus transportation is offered only in the designated areas; therefore, through necessity, most students enroll in the school in their area. Dormitories are provided at only two of the trade schools, with a large majority of the students commuting. Thus the elimination of dual zones is significant in desegregating the trade schools. The evidence reflects that there is a duplication of courses in the Negro and in the white trade schools located in the same cities or areas. The elimination of this duplication is a feasible and an educationally sound means of eliminating the racial identifiability of these institutions.

The solving of the problems incident to the elimination of the segregated trade schools and junior colleges requires a rather detailed treatment in several areas of the operation of both the trade schools and the junior colleges.

### JUNIOR COLLEGES

I. *Mobile State Junior College and James H. Faulkner State Junior College*

Effective with the commencement of the 1971–72 school year, the attendance area for Mobile State Junior College will comprise Mobile and Washington Counties. Students from Mobile and Washington Counties will not be permitted to attend the James H. Faulkner State Junior College except for programs that are not offered and cannot be offered at Mobile State. James H. Faulkner Junior College will have as its attendance area Baldwin County and adjacent areas to the north and east. James H. Faulkner Junior College will not send buses into Mobile County and Mobile State Junior College will not transport by bus students from Baldwin County. Mobile State Junior College will, effective with school year 1971–72, be considered the community college for Mobile, Mobile County and Washington County. Students from Mobile and Washington Counties wishing to enroll in programs not offered by Mobile State, will register for these programs at Mobile State prior to enrolling at James H. Faulkner Junior College. Students from the James H. Faulkner attendance area who may wish to enroll in any program offered by Mobile State not offered by James H. Faulkner will register at James H. Faulkner prior to enrolling at Mobile State.

Since the evidence reflects that Mobile State Junior College has the most limited facilities of the state junior colleges, facilities will be constructed and a curriculum developed that will expand the program at Mobile State so that it is comparable to that offered in and by the James H. Faulkner State Junior College. Facilities and curriculum will be so developed as to attract a large proportion of white students as well as Negro students. This Court understands that the State Board of Education does not control the expenditure of capital outlay funds for junior colleges. These funds are, according to the information furnished the Court by the defendants, allocated by the Alabama Junior College and Trade School Authority, which is not now a party to this action. The State Board's authority, with respect to capital outlay, does not extend beyond making recommendations. It is this Court's intention to enjoin further capital outlays for projects to be undertaken at any of the junior colleges until Mobile Junior College has been transformed into a fully desegregated two-year institution serving primarily Mobile and Washington Counties, and is

equal in physical facilities and curriculum to the James H. Faulkner Junior College. The United States is hereby DIRECTED to take the necessary steps to file the appropriate pleadings, within 15 days from the date of this order, to make the Alabama Junior College and Trade School Authority and its individual members defendants in this action.

Immediate curriculum enlargement is to be undertaken at Mobile State, including acquisition of a computer needed to develop a computer science and data processing program, teacher aide and library programs, and associate degree programs in nursing, medical technology and other health related areas.

II. *Wenonah State Junior College and Jefferson State Junior College*

The United States through its Office of Education proposes to transfer from Jefferson State Junior College to Wenonah State Junior College all nursing, medical technology and other health related programs. The defendants strenuously object to this proposal. Upon consideration of the proposal and the objections thereto, this Court has determined that it is not educationally sound to circumscribe the curriculum of Jefferson State Junior College as proposed by the United States Office of Education. Furthermore, the Court finds that the proposal of the United States to move the computer science program to Wenonah is likewise not educationally sound. Such a move would eliminate many people from these fields, particularly those who live in the eastern part of Jefferson County and contiguous counties.

## TRADE SCHOOLS

■ The basic approach of the plan designed to desegregate the Alabama Trade Schools which was submitted to the Court by the United States through its Office of Education is to divide the courses offered into "initial" and "advanced" phases in the Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile trade schools. Upon considera-

tion of this proposal and the defendants' objections thereto, this Court concludes that the proposal is not economically and educationally feasible. This is true because in virtually every vocational course students move at different rates of speed, thereby creating a situation where students who progress rapidly in the "initial" phase will be ready to move on to the "advanced" phase sooner than the students who progress more slowly will have completed the "advanced" phase; thus undue confusion will result by reason of the fact that there might not be any vacancies in the "advanced" phase. Furthermore, in the trade schools, unlike ordinary colleges and high schools, different students are simultaneously working on different machines and at different work stations; vocational courses are not taught in any particular sequential order; students are permitted to progress at their own rate of speed so that the length of the course varies with each individual student and there is no basis for objective testing so that one student can be compared with another. Therefore, this proposal by the United States will not be adopted by this Court. This Court considers the better approach to desegregating the trade schools to be the elimination of the duplication of programs and of curricula in the schools located in Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile. The defendants will, within 90 days from the date of this order, completely eliminate all duplicate courses offered in the two trade schools in each of the cities of Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile.

As to the John C. Calhoun Trade School, located in Decatur, and the J. F. Drake Trade School, located in Huntsville, as has already been noted each of these schools is assigned a general geographical attendance area. While the Court will not order the elimination of duplicate courses in the trade schools located at Decatur and Huntsville, the defendants will be required to establish separate zones for the John C. Calhoun and the J. F. Drake trade schools and

will not permit any student residing in one of the zones to attend the trade school outside that zone unless it is to study a course or subject that cannot be offered by the trade school in the zone where the student resides.

The United States proposes that the Wenonah State Technical School be closed and that its courses, equipment, students and teachers be transferred to the Bessemer State Technical Institute. Upon consideration of this proposal and the defendants' objections thereto, this Court concludes that the adoption of such a proposal would not be educationally or financially feasible. The proposal is therefore rejected.

The United States proposes that this Court require the State Superintendent to appoint a committee on comprehensive planning for the trade schools and junior colleges. The proposal envisions that the committee will study in depth the dual system based on race of trade schools and junior colleges in Alabama and will devise additional specific measures necessary to carry out the requirements of this plan. This Court will for the time being reserve acting upon said proposal.

## FACULTY DESEGREGATION

■ The Jefferson State Junior College and Wenonah State Junior College will, commencing immediately and to a substantial degree, exchange faculty members through the use of temporary assignments until a desegregated, racially balanced faculty to the extent hereinafter ordered is attained in these two institutions.

Mobile State Junior College and James H. Faulkner Junior College will, commencing immediately and to a substantial degree, exchange faculty members through the use of temporary assignments until a desegregated, racially balanced faculty as hereinafter ordered by this Court is attained by these two institutions.

In the trade schools located in Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile, and the John C. Calhoun and the J. F. Drake schools, located in Decatur and Huntsville, respectively, there will be an immediate exchange of faculty members through the use of temporary assignments until a desegregated, racially balanced faculty, to the extent hereinafter ordered, is attained in each of said institutions.

Effective not later than September 1971 the teachers and instructors, and other staff members employed in each of the trade schools and junior colleges in the State of Alabama shall be so assigned that in no case will the racial composition of a staff indicate that a school is intended for Negro students or white students. The defendants shall assign the teaching staff and other staff members so that the ratio of Negro to white teachers and other staff members in each of the junior colleges and trade schools in the State of Alabama is substantially the same as such ratio is for the Negro and white population in the State of Alabama. This means that, effective September 1971, a minimum of 25 percent of the teachers and other staff members at each junior college and trade school will be Negroes.

The defendants, to the extent necessary to carry out this aspect of this order, will direct staff members of each trade school and junior college as a condition of continued employment to accept any new assignments that may be necessary.

■ Staff members who work on the administrative level will be hired, assigned, promoted, paid, demoted and dismissed without regard to race or color.

If there is to be a reduction in the number of teachers or other professional staff employed in the State junior colleges or trade schools which will result in a dismissal or demotion of any such staff member, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable nondiscriminatory standards from among all the staff throughout the entire system.

In addition, if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race or color different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction the defendants will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. "Demotion" as used in this order includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or course other than one for which he is certified or for which he has had substantial experience within a reasonably current period.

## RECRUITMENT OF STUDENTS FOR THE JUNIOR COLLEGES AND TRADE SCHOOLS

█ Effective immediately the officials responsible for the recruiting of students at each of the junior colleges and trade schools operated by the defendants will make special efforts to recruit students who are of the race different from that of the students which the institution was originally designed to serve. Any recruiting team which visits high schools to discuss its institution with the students will be composed of members of both races. All promotional literature and catalogs sent to high schools and to prospective students will state clearly that students are accepted without regard to race or color.

The State Department of Education will prepare a brochure describing in detail all of the trade schools and junior colleges operated in the State of Alabama, the courses offered at each, and the attendance areas which these schools serve. This brochure will state that it is the policy of the State of Alabama for students to attend the school serving the area in which they live unless they wish to pursue a course not offered at their area school. This brochure will be sent to every high school principal, every city and county school superintendent, every trade school director and every junior college president in the State of Alabama, and copies will be made available to recruiting teams for use in recruiting and to members of the public upon request.

## REPORTING

Within sixty days from the date of this order and again on September 15, 1971, the defendant shall file with this Court in writing, and furnish copies to counsel for the United States and for the plaintiffs, a report reflecting the faculty and staff by race in each of the junior colleges and trade schools operated throughout the State of Alabama, the racial composition of the student body in each of said institutions, the revised transportation and attendance areas as herein ordered, and the curriculum offered in each of the trade schools located in Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile. The report to be filed September 15, 1971, will also reflect the per-student allocation of funds for Wenonah, Jefferson State, Mobile State and James H. Faulkner Junior Colleges.

A formal order will be entered accordingly.

## DECREE

Pursuant to the findings and conclusions set forth in the orders heretofore entered in this case as said orders relate to the junior colleges and trade schools operated by the defendants throughout the State of Alabama and particularly the findings and conclusions set forth in the memorandum opinion made and en-

tered this date, it is the order, judgment and decree of this Court that:

1. The United States of America, acting through the Attorney General or his authorized representative, file within fifteen days from the date of this order an appropriate pleading that will enable this Court to enter a formal order making the Alabama Junior College and Trade School Authority and its individual members defendants in this action.

2. The Alabama Junior College and Trade School Authority be and it is hereby allowed twenty days from the date said Authority and its individual members are made parties defendant in this action to show cause in writing why said Authority and its individual members should not be enjoined from any further expenditure of capital outlay funds for junior colleges until the Mobile State Junior College has been transformed into a fully desegregated two-year institution serving primarily Mobile and Washington Counties and is equal in physical facilities and curriculum to the James H. Faulkner Junior College.

It is the further order, judgment and decree of this Court that the Alabama State Board of Education and the individual members thereof, and the State Superintendent of Education, their agents, successors, and all those acting in concert with them be and each is hereby enjoined from:

1. Failing to eliminate completely within ninety days from the date of this order duplicate programs, courses and studies offered in the two trade schools in each of the cities of Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile.

2. Failing to establish definite, separate attendance zones, effective not later than the commencement of the 1971–72 school year, for the John C. Calhoun Trade School, located in Decatur, and the J. F. Drake Trade School located in Huntsville, and from failing to restrict the student enrollment to students residing in each of said attendance zones.

3. Failing to immediately—and so as to desegregate to a substantial degree through the use of temporary assignments—exchange faculty members between Jefferson State Junior College and Wenonah State Junior College, and between Mobile State Junior College and James H. Faulkner Junior College.

4. Failing to immediately—and so as to desegregate to a substantial degree through the use of temporary assignments—exchange faculty members between the following trade schools:

Alabama School of Trades and Gadsden State (Gadsden),

Bessemer State and Wenonah State (Birmingham),

Shelton State and Tuscaloosa (Tuscaloosa),

Patterson and Trenholm (Montgomery),

Southwest and Carver (Mobile), and John C. Calhoun (Decatur) and J. F. Drake (Huntsville).

5. Failing to immediately eliminate all transportation areas for all the junior colleges and trade schools to the extent that said transportation areas are based upon race.

6. Failing to immediately and completely desegregate all transportation facilities that are used to transport students to the junior colleges and trade schools operated by the defendants.

7. Failing to establish a definite attendance area, effective not later than the commencement of the 1971–72 school year and comprised of Mobile and Washington Counties, for the Mobile State Junior College; and failing to establish a definite attendance area, effective not later than the commencement of the 1971–72 school year and comprised of Baldwin County and adjacent areas to the north and east, for the James H. Faulkner Junior College. Students residing in one attendance area will not be permitted to enroll in programs offered in the junior college located outside their

attendance zone unless said programs are not and cannot be offered in their attendance zone.

8. Failing to immediately enlarge the curriculum at Mobile State, including the acquisition of a computer of a type that will make possible the development of a computer science and data processing program; also failing to enlarge the teacher aide and library programs and associate degree programs in nursing, medical technology, and other health-related areas.

9. Failing, not later than September 15, 1971, to assign teachers and instructors and other staff members in each of the trade schools and junior colleges located in the State of Alabama and operated by the defendants so that the ratio of Negro to white teachers and other staff members in each of said schools is substantially the same as such ratio is for the Negro and white population in the State of Alabama.

10. Failing to immediately implement fully the recruiting program outlined by this Court in the memorandum opinion entered herein this date.

It is further ordered that defendants, within sixty days from the date of this order and again on September 15, 1971, file with this Court, and furnish copies to counsel for the United States and for the plaintiffs, a report reflecting the faculty and staff, by race, in each of the junior colleges and trade schools operated by defendants, the racial composition of the student body in each of said institutions, the revised transportation and attendance areas as herein ordered, and the curriculum offered in each of the trade schools located in Gadsden, Birmingham, Tuscaloosa, Montgomery and Mobile. The report to be filed September 15, 1971, will also reflect the curriculum offered and the per-student allocation of funds for Wenonah, Jefferson State, Mobile State and James H. Faulkner Junior Colleges.

It is further ordered that jurisdiction of this matter be and the same is hereby retained.