The **CHOCTAW NATION OF OKLAHOMA** and the **Chickasaw Nation, Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

**No. 630–89L.**

United States Claims Court.

May 19, 1992.

Bob Rabon, Hugo, Okl., for plaintiffs.

Thornton Withers Field, Washington, D.C., with whom was Asst. Atty. Gen. Richard E. Stewart, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

### FACTS

During a status conference on February 26, 1992, I informed the parties of my fourteen year association with the Office of the Solicitor of the United States Department of Interior which ended in 1983 with my appointment to the bench of this court. During the period from January 21, 1981 through May 16, 1983, I had general supervisory authority over all decisions of the Office of the Solicitor, including its Division of Indian Affairs. The Division of Indian Affairs provides legal services to the Secretary, Assistant Secretary for Indian Affairs, and the Bureau of Indian Affairs. Mr. Tim Vollmann, the Interior Department Regional Solicitor in charge of the Southwest Region in Tulsa, Oklahoma, is charged with providing legal assistance to the Interior Department's Bureaus of Indian Affairs and Land Management.

> Among [his] responsibilities is the supervision of all legal services in connection with [Bureau of Indian Affairs'] efforts to remove trespassers from that portion of the Arkansas Riverbed in eastern Oklahoma which is held for the benefit of the Cherokee, Choctaw, and Chickasaw Indian Nations, and also to seek to settle questions of title to that portion of the Riverbed.

Mr. Vollmann was employed in the Division of Indian Affairs when I was Deputy Solicitor. As Deputy Solicitor of the Department of Interior, I supervised Mr. Vollmann indirectly. Mr. Vollmann remembers meeting with me on the average of twice per week. My recollection is that we did not meet that often, but more like two to three times per month. While it is unclear to me exactly what role Mr. Vollmann will play in this litigation, he is not an attorney of record in this case, or its companion case, *Cherokee Nation of Oklahoma v. United States*, 218–89L.

In a spirit of openness, I, *sua sponte*, informed both parties of my prior relationship with the Department of Interior, which ended nine years ago. I suggested that, with defendant's concurrence, plaintiffs might wish to speak to Mr. Vollmann to confirm what I had stated for the record. Plaintiffs subsequently motioned for my withdrawal from the case apparently because of my affiliation with the Interior Department before entering the federal judiciary.

## DISCUSSION

Plaintiffs argued that the members of the tribe, on whose behalf these suits were brought, are generally mistrustful of the Interior Department, and of the Bureau of Indian Affairs in particular. The court concluded from plaintiffs' argument that the members of the tribe might attribute an unfavorable outcome in this litigation to an "anti-Indian" bias after my years of service at the Department of Interior. Defendant opposed the motion on the grounds that during my employment with the Department of Interior, I had no connection whatsoever with the issues in the instant litigation. Moreover, argued defendant, my prior association with Mr. Vollmann is insufficient grounds for withdrawal from the case.

RUSCC 66(b) states that a "judge shall withdraw from a case when required by 28 U.S.C. § 455...." Title 28 U.S.C. § 455 (1988) states in relevant part:

(a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party ...;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

▮ Congress' intent in enacting § 455 was to guarantee litigants a fair forum in which they may pursue their claims. *United States v. Will*, 449 U.S. 200, 217, 101 S.Ct. 471, 481, 66 L.Ed.2d 392, 407 (1980). " '[I]f there is [any] reasonable factual basis for doubting the judge's impartiality, he should disqualify himself....' " *Will*, 101 S.Ct. at 481 (quoting S.Rep. No. 93–419, p. 5 (1973)).

The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall v. Small Business Administration* 695 F.2d 175, 179 (5th Cir. 1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.

*Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir.1986), *aff'd*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

▮ The test under § 455(a) is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality. *McWhorter v. Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990); *Parker v. Conners Steel Co.*, 855 F.2d 1510 (11th Cir.1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). Such doubts about a judge's impartiality cannot be based on mere suggestion or unsupported beliefs and assumptions. *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed.Cir. 1985). The judge's bias must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case. *McWhorter*, at 678. As then Justice Rehnquist noted when faced with a situation uncannily similar to that faced by the court today, "a federal judge has a duty to *sit* where *not disqualified* which is equally as strong as the duty to *not sit* where *disqualified*." *Laird v. Tatum*, 409 U.S. 824, 837, 93 S.Ct. 7, 15, 34 L.Ed.2d 50, 60 (1972).

In *Laird*, Chief Justice Rehnquist had recently been elevated to the Supreme Court when a litigant motioned to disquali-

fy him from participation in the case. The movant argued that because the Chief Justice had worked at the Department of Justice and had mentioned that case by name during hearings before a Senate subcommittee, the Chief Justice was tainted and could not provide impartial judgement. Like the court in the instant case, Chief Justice Rehnquist "never participated, either of record or in any advisory capacity, in the District Court, in the Court of Appeals, or in this Court, in the government's conduct of the case of *Laird v. Tatum.*" *Laird*, 93 S.Ct. at 10.

In denying the motion, then Justice Rehnquist cited a plethora of Supreme Court justices who, prior to elevation, either participated in cases or, as members of the legislature, created laws, with which they were even more intimately connected than Chief Justice Rehnquist's oblique relation to *Laird.* For example, "[i]n *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943), a case brought and tried during the time Mr. Justice Murphy was Attorney General, but defended on appeal during the time that Mr. Justice Jackson was Attorney General, the latter disqualified himself but the former did not." *Laird*, 93 S.Ct. at 11.

Similarly, in *Maier v. Orr*, a member of the Armed Forces moved to vacate the opinion of the Court of Appeals for the Federal Circuit because then Chief Judge Markey, who participated in the decision of the panel, had been a Brigadier General in the Air Force Reserve. At the time of then Chief Judge Markey's decision in the *Maier* panel, he had been retired from the Air Force Reserves for nine years. In denying the motion to vacate, the Federal Circuit noted that,

> [a]bsent a factual showing of a reasonable basis for questioning his or her impartiality, or allegations of facts establishing other disqualifying circumstances, a judge should participate in cases assigned. Conclusory statements are of no effect.... Frivolous and improperly based suggestions that a judge recuse should be firmly declined. [citations omitted] Nor does mere prior asso-

ciation form a reasonable basis for questioning a judge's impartiality. *Maier*, 758 F.2d at 1583.

After much reflection, it is clear that plaintiffs in the instant case mistrust my former employer and, for reasons known only by them, have included me in that aura of mistrust. I determine, however, that plaintiffs' discomfort with some illusory partiality attributed to me does not fall within the objective standard used to interpret § 455(a). It is clear from *Laird* and *Maier* that more than a mere suggestion of impartiality is required to dislodge a judge's duty to dispose of assigned cases. Plaintiffs in the instant case failed to raise a single utterance or action on my part that would even begin to place my behavior on par with then Justice Rehnquist's in *Laird.* Like former Chief Judge Markey, my association with Department of Interior was terminated nine years ago. As Mr. Vollmann's affidavit attested, there is not an iota of evidence on which an objective, disinterested, lay observer, fully informed of the facts of this motion, could entertain a significant doubt about my impartiality. Mere discomfort with my past employer, whether based on real or imagined prejudices in the Department of Interior, unsubstantiated by facts, falls well below the standard required by § 455(a).

Nor is mere prior association sufficient to disqualify under § 455(b)(3). The complaint in the case at bar was filed in this court in 1989, approximately seven years after I departed from the Department of Interior. Thus, it would have been physically impossible for me to have participated as "counsel, adviser or material witness" in this proceeding. Nor could I have expressed an opinion concerning the merits of this case prior to joining the Claims Court for the same reason. Plaintiffs urged that I should disqualify myself because I was employed with the Department of Interior when the Supreme Court decided *Choctaw Nation v. Oklahoma*, 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970). This decision affirmed that, through various treaties, the Cherokee, Choctaw, and Chickasaw Tribes received title to the Arkansas

Riverbed and that these lands were held in trust for the Tribes by the United States, acting through the Department of Interior. Once again, I direct the parties' attention to then Justice Rehnquist and his exhaustive discussion of disqualification by reason of association with cases before the court.

█ Nor is an appearance of impropriety created every time a person with whom a presiding judge is acquainted comes into his court. *Warner v. Global Natural Resources PLC*, 545 F.Supp. 1298, 1301 (S.D.Ohio 1982). Even if Mr. Vollmann were an attorney of record, my duty to hear this case would remain unaffected. As defendant pointed out, it is unreasonable to question the impartiality of a judge simply because many years ago he was a colleague and supervisor to an attorney who is presently involved in the litigation before him.

## CONCLUSION

After careful consideration of plaintiffs' arguments, and a thorough review of the law surrounding 28 U.S.C. § 455 (1988), plaintiff's motion is denied, without costs.