The **CHEROKEE NATION OF OKLAHOMA**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 218–89L.

United States Claims Court.

July 20, 1992.

Joe R. Reeder, Washington, D.C., for plaintiff.

Thornton Withers Field, Washington, D.C., with whom was Asst. Atty. Gen. Richard E. Stewart, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on plaintiff's motion for reconsideration of the court's Order of May 19, 1992, 26 Cl.Ct. 215, denying plaintiff's motion for voluntary withdrawal of the presiding judge. For the reasons set forth below, the court denies plaintiff's motion.

In the court's Order of May 19, 1992, I denied plaintiff's motion to voluntarily withdraw from this case. The facts precipitating plaintiff's motion are amply stated in that Order and need not be repeated here. On June 3, 1992, plaintiff filed its motion for reconsideration pursuant to RUSCC 59, in which it argued, *inter alia*, that I should disqualify myself from this case based on *United States v. Alabama*, 828 F.2d 1532 (11th Cir.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). In that case, the United States, joined by students and faculty of Alabama State University, a predominantly black institution, sued the state of Alabama pursuant to 42 U.S.C. § 2000d (1988) for its failure to eradicate the vestiges of racial discrimination in Alabama's state-sponsored institutions of higher education, and for its failure to provide these predominantly black institutions with the same levels of funding given other institutions. The case was assigned to Judge U.W. Clemon of the United States District Court for the Northern District of Alabama. Defendants moved to disqualify Judge Clemon pursuant to 28 U.S.C. § 455 (1988) on several grounds. Judge Clemon found no reason to recuse himself from the litigation. On appeal, after rejecting the bulk of defendant's arguments for disqualification, the United States Court of Appeals for the Fifth Circuit found that Judge Clemon should have disqualified himself from the case because during his tenure as a state senator, Judge Clemon "actively participated in the very events and shaped the very facts" that were in issue in that case.[1] *United States v. Alabama*, 828 F.2d at 1544. The court described Judge Clemon's activities in the following terms:

> As chairman of the Senate Rules Committee, Judge Clemon played a critical role in the confirmation of those individuals nominated for positions on the board of trustees of the defendant institutions. Judge Clemon shaped the composition of these governing boards by acting along with other members of his committee to prevent nominations from reaching the Senate floor.... [I]t is clear that Judge Clemon's activities in the Senate were relevant to and plainly affected the ultimate outcome of the nomination and confirmation process for the board of trustees of the defendant institutions.

*Id.*

In addition, the court also stated that, as a state senator, Judge Clemon worked actively to pass a bill providing Alabama A & M University with $10,000,000 to revitalize its physical plant which, as noted in the bill, was inferior to historically white universities. The court also found that Judge Clemon participated as attorney of record in the case of *Lee v. Macon County Bd. of Educ.*, 317 F.Supp. 103 (M.D.Ala.1970), *modified*, 453 F.2d 524 (5th Cir.1971), a suit filed pursuant to 42 U.S.C. § 2000d (1988) to eliminate the vestiges of discrimination in high schools and institutions of higher learning in Alabama. Although the

---

1. The state urged disqualification because the Judge's children were members of the class that had brought the suit. The Fifth Circuit did not tarry long to conclude that "[t]o disqualify Judge Clemon on the basis of his children's membership in the plaintiff class also would come dangerously close to holding that minority judges must disqualify themselves from all major civil rights actions." *United States v. Alabama*, 828 F.2d at 1542. Defendant also argued that, before accepting his appointment to the federal judiciary, Judge Clemon had been a civil rights attorney, and therefore, had been heavily involved in the civil rights movement generally, though not in the particular litigation before him. The Fifth Circuit stated that "[i]t is well settled that the facts pleaded ... will not suffice to show the personal bias required by [28 U.S.C. § 455] if they go to the background and associations of the judge rather than to his appraisal of a party personally." *Id.* Nor would the Fifth Circuit disqualify Judge Clemon based on his strong public pronouncements on civil rights issues before his appointment to the federal bench disqualify him from hearing the case.

Judge's involvement in that suit was restricted to the representation of black high school principals in a race discrimination suit, the court concluded that,

> [e]ven this limited involvement in *Lee v. Macon*, however, left Judge Clemon with knowledge of facts that were in dispute in the instant case. The State's treatment of black high school principals during the period the trial judge represented their cause became a factual issue at trial. Plaintiff presented testimony about the long, continuous history of racially discriminatory employment practices suffered by black high school principals in Alabama.

*United States v. Alabama,* 828 F.2d at 1545.

The Fifth Circuit found that Judge Clemon had personal, extrajudicial knowledge of the facts of *United States v. Alabama* because of his prior professional involvement with the facts and issues in *Lee v. Macon County Bd. of Educ.,* and his work in the Alabama state senate. For this reason, Judge Clemon was disqualified from hearing the case pursuant to 28 U.S.C. § 455(b)(1).

In the instant case, plaintiff contended that my alleged *omissions,* as Deputy Solicitor of the Department of Interior, to address the grievances raised in plaintiff's complaint were

> tantamount to a decision not to act—a decision that, in a case such as this, has its foundation in the legal advice the entity receives or fails to receive. As Deputy Solicitor, Judge Tidwell would have been, in part, responsible for the Department's effective decision not to act.

My alleged omissions fail to trigger disqualification under 28 U.S.C. § 455(b)(1) for two reasons. First, the question of the legality of a Department policy must necessarily be preceded by a policy question presented to the Secretary of Interior, who would then seek the advice of the Office of the Solicitor. Contrary to plaintiff's asser-

tion that my alleged omission was "a decision not to act," I made no conscious choice to act or not to act on any issues of fact or law related to the instant litigation because I had never been requested to advise the Secretary on the legality of acting or not acting on the facts of the instant case. I have never had access to, or familiarity with, the facts of this case, other than that which has been presented to me as the judge assigned to this case. To the best of my knowledge, during my tenure as Deputy Solicitor, none of the facts or issues raised in plaintiff's complaint were ever the subject of a request for advice by the Secretary of Interior or any other policy-maker in the Department of the Interior. As Deputy Solicitor, I did not participate in any fashion whatsoever in the events at issue in this case. Having never had to decide whether to act or not, I therefore could not have committed the omissions alleged by plaintiff.

Second, I, unlike Judge Clemon, did not glean personal, extrajudicial knowledge of any of the facts of the litigation now before the court at any time, but especially during the twenty-five days in which the statute of limitations in this case overlapped my tenure as Deputy Solicitor of the Department of Interior.[2] Judge Clemon had a long and intimate involvement with the factual and legal issues arising from the effects of segregation in Alabama's institutions of higher learning. Prior to this litigation, I had no knowledge of plaintiff's claims or the facts involved in its litigation against the United States. While I did have general knowledge of Indian claims against the Secretary of the Interior, and specific knowledge of several that were completely unrelated to this case, for me to recuse myself would come dangerously close to disqualifying all judges with familiarity and experience with Indian Law from all Indian claims. Nor, unlike Judge Clemon, have I ever made "strong public pronouncements" in this area of law prior to my appointment to the bench. In fact,

---

**2.** This case was filed on April 21, 1989. The six year statute of limitations ran on April 21, 1983. Twenty-five days later, on May 16, 1983, I re-

signed my position as Deputy Solicitor at the Department of Interior in favor of appointment to the bench of this court.

the Solicitor of Interior retained unto himself the responsibility for making decisions and rendering legal advice on all major Indian issues, and especially Indian land and water rights claims similar to those raised in plaintiff's complaint.

Plaintiff also argued in its motion that the court has made two decisions in the course of this litigation that "lessen any potential culpability of the tenure of Judge Tidwell as Deputy Solicitor." First, plaintiff's original complaint sought damages for events that first accrued years before April 21, 1983. In its Order of October 5, 1990, the court properly applied the continuing claim doctrine to plaintiff's complaint. The continuing claim doctrine, an exceedingly narrow, judge-made exception to the six-year statute of limitations, limited plaintiff's complaint to those instances of trespass or breach of duty which, though commencing before April 21, 1983, remained extant during the six year statutory period. *Cherokee Nation of Okla. v. United States*, 21 Cl.Ct. 565, 572 (1990). Plaintiff contended that the "effect of this narrowing has been to exclude most of the time period for which he himself was potentially responsible for the omission alleged in the complaint." Plaintiff's motion suggested that the court intentionally limited the scope of plaintiff's complaint so as to avoid both the need to inquire into my actions as Deputy Solicitor and recuse myself from this proceeding, apparently "lessening" some murky, unnamed "culpability."

Second, the court also deleted from plaintiff's complaint claims for failure to protect lands from trespassers as well as an alleged duty by the government to survey lands. Plaintiff contended in its motion that by so ruling, the court "eliminated the possibility of a finding that the Solicitor's office should have advised the Bureau of Land Management to perform surveys as the only effective means to protect the lands from trespassers." Once again, plaintiff insinuated that the court intentionally eliminated a duty to survey as well as a claim to protect land from trespassers because the court sought to "protect" the

Office of the Solicitor from some vague allegations of "culpability."

Plaintiff's disingenuous attempt to divine some nefarious intent on the part of the court is unjustified for several reasons. While the court's lengthy Order of October 5, 1990, and its Order of May 8, 1991, vigorously pruned plaintiff's complaint, these Orders merely did as the law commanded. As explained in detail in its Orders of October 5, 1990, in applying the continuing claim doctrine, the court applied the law of the United States Court of Appeals for the Federal Circuit. Thus the court properly limited the depth of plaintiff's complaint but did not close the door on expanding the breadth of the claims contained therein.

On June 7, 1991, plaintiff filed its second amended complaint and defendant again moved to strike and dismiss. The court's Order of January 9, 1992 granted defendant's motion to strike in part, further limiting plaintiff's complaint to instances of trespass pleaded with requisite specificity. Rather than dismiss plaintiff's complaint for failing to comply with the court's Order of May 8, 1991, the court's Order of January 9, 1992 noted that the "nexus of a valid claim" was to be found in plaintiff's complaint, and again denied defendant's motion to dismiss. Plaintiff filed its third amended complaint soon after, and defendant again moved to strike and dismiss with prejudice. In its Order of March 5, 1992, the court once again struck those portions of the complaint that failed to comply with the court's Order of January 9, 1992, and once again declined to dismiss plaintiff's complaint. The court also noted explicitly in its Order of March 5, 1992 that "if plaintiff is able to plead [ ] specific instances of trespass to these lands, i.e., identify the trespasser, the date of accrual of the trespass, and the exact lands affected by the trespass, plaintiff may move to amend its complaint pursuant to Rule 15(a) of the United States Claims Court." *Cherokee Nation of Okla. v. United States*, 25 Cl.Ct. 361, 362 (1992). Amendments pursuant to RUSCC 15(a) are judged under a permissive standard, as that rule is intentionally liberal. *Foman v. Davis*, 371 U.S. 178, 83

S.Ct. 227, 9 L.Ed.2d 222 (1962). Thus, the court specifically noted that plaintiff was not foreclosed from casting a wider net once it met the requisite specificity in subsequent claims of trespass. Nor, in the court's estimation, did the law require the court to grant defendant's multiple motions to dismiss at any time during the three years that this litigation has been extant.

Rather than seek interlocutory appeal of the court's orders pursuant to 28 U.S.C. § 1292(d)(2) (1988), plaintiff's motion intimated that the court intentionally ruled against plaintiff in an attempt to obstruct justice. The court is surprised at plaintiff's insinuation and unsure of plaintiff's purpose in making such irresponsible allegations. Every word that I have uttered in performance of my duties as a member of the federal judiciary has been, continues to be, and shall remain the fruit of my best efforts to render justice blindly, without consideration for the race, creed, color, or class of those who appear before me. The obligation to do so, just as my oath to uphold the rule of law and the Constitution of the United States of America, is sacred. Such has been my credo since entering federal service and so it shall be until my term on this court expires. The instant case is no exception.

For the reasons set forth above, the court denies plaintiff's motion to reconsider the Order of this court of May 19, 1992.

IT IS SO ORDERED.

