24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Lee TANNER, Defendant-Appellant.
 No. 93-10136.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1994.
Decided May 2, 1994.
As Amended on Denial of Rehearing
Aug. 8, 1994.
 
 Before: SCHROEDER, D.W. NELSON, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Lee Tanner appeals the district court's denial of his motion to withdraw his guilty plea on one count of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. Secs. 841(a)(1) and 846, one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 841(a)(1), and one count of possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1).
 
 I.
 
 3
 The district court found that some time prior to trial, the government received information that some of Tanner's witnesses intended to commit perjury, and therefore used an informant to record a conversation with Tracy Norwood (defendant's former girlfriend) and Stacy Tanner (defendant's sister), in which the women apparently admitted that they were planning to lie and say they knew nothing about defendant's drug activities.
 
 
 4
 On the day before Tanner's trial was to begin, Assistant United States Attorney Griffin then subpoenaed several of Tanner's witnesses, whom the government intended to call during its case in chief. Those witnesses included defendant's two sisters, Stacy and Lisa Tanner; Tracy Norwood; Betty Norwood, Tracy Norwood's mother; and Tanya Starks, defendant's current girlfriend. The subpoenas directed the witnesses to "check in" at the U.S. Attorney's Office, which is in the same building as the courthouse, prior to trial.
 
 
 5
 On the first two days of trial, the prosecutor, Assistant United States Attorney Griffin, met twice with Stacy Tanner and Tanya Starks, and once with Betty and Tracy Norwood. In each of these encounters, Griffin told the witnesses that he suspected that at least two of them were planning to commit perjury, and cautioned them that if they lied and he could prove it they would be prosecuted for perjury and sent to prison. He also told the witnesses that he had a tape recording supporting his belief that they planned to lie on the stand.
 
 
 6
 On the second day of trial, after their second encounter with Griffin, Stacy Tanner and Tanya Starks asked Case Agent Barlowe if they would still be called as witnesses. When told that they would, the women told Barlowe that they had not been candid before, and in fact they had information concerning Robert Tanner's drug dealing. Both witnesses then separately admitted to seeing Robert Tanner with drugs and cash from drug sales in 1990.
 
 
 7
 During the noon recess that day, Starks and Stacy Tanner told defendant's attorneys what they had previously told the government agents. Believing that this testimony would destroy Tanner's defense, the defense attorneys discussed the situation with Tanner and sought to negotiate a plea bargain with the government. Tanner's guilty plea on all three counts was accepted at 2:05 p.m. that afternoon. Sentencing was set for a later date.
 
 
 8
 On January 7, 1992, represented by new counsel, defendant filed a motion to withdraw his guilty plea, claiming that he was innocent of the charges. He later amended his motion to allege that he should be allowed to withdraw his guilty plea because the government had intimidated his witnesses, and because he had not had sufficient time to consider his options or understand what he was doing when he entered his guilty plea, thus rendering his plea involuntary. In a motion filed August 14, 1992, Tanner also sought discovery of the government's alleged tape recording of the conversation between the informant and defendant's witnesses, in which defendant's witnesses indicated that they were planning to give false testimony. The district court refused to order this discovery.
 
 
 9
 The district court held an evidentiary hearing on defendant's claims of governmental misconduct and involuntariness, and denied defendant's motion in a lengthy opinion dated November 4, 1992.
 
 
 10
 The day before Tanner's scheduled sentencing, on February 24, 1993, Tanner moved the court for a mental competency hearing pursuant to 18 U.S.C. Sec. 4241(a). The court denied the motion, and sentenced Tanner to 352 months in prison on February 25, 1993. Defendant now appeals, raising several claims of error.
 
 II.
 
 11
 Tanner's first argument on appeal is that District Judge Levi should have recused himself pursuant to 28 U.S.C. Sec. 455(a), because as the former United States Attorney for the Eastern District of California, District Judge Levi had hired AUSA Griffin. In addition, defendant contends that Judge Levi could not be expected to preside impartially over this case because defendant's claim of government misconduct was based in part upon the U.S. Attorney's Office's practice of requiring witnesses to "check in" at their office before trial. These claims are meritless.
 
 
 12
 First, the mere fact of a prior supervisory relationship does not disqualify a judge from presiding over a case in which a former employee is an attorney. See, e.g., United States v. Bosch, 951 F.2d 1546 (9th Cir.1991) (judge not required to recuse himself when prosecutor was former law clerk), cert. denied, 112 S.Ct. 2975 (1992). The record is devoid of any indication that Judge Levi and Griffin had any kind of a personal relationship, or that Judge Levi favored the prosecution in any way in this case.
 
 
 13
 Similarly, the fact that a U.S. Attorney's Office policy was at issue in this case did not disqualify Judge Levi from presiding over it. In general, a judge may preside over cases involving issues on which the judge has either specialized knowledge or an opinion. See, e.g., United States v. Payne, 944 F.2d 1458, 1476-77 (9th Cir.1991), cert. denied, 112 S.Ct. 1598 (1992). In this case, there is no indication in the record that Judge Levi in fact had such an interest in the boilerplate language requesting subpoenaed witnesses to check in at the United States Attorney's Office that he could not fairly consider its implications in a charge of prosecutorial intimidation and misconduct.
 
 
 14
 Judge Levi was not required to recuse himself from presiding over defendant's trial, particularly where the defendant did not move for recusal.
 
 III.
 
 15
 Tanner next argues that the district court should have allowed him to withdraw his guilty plea in this case, because the prosecutor intimidated his defense witnesses, and because his plea was not free and voluntary as it was entered without adequate time to reflect or consult with counsel. We conclude that the district court did not so err in this case.
 
 
 16
 As the trial judge noted, the boilerplate language on the government's subpoena directing the witnesses to check in at the prosecutor's office did not constitute or contribute to improper coercion, as none of the witnesses in fact appeared at the office as requested.
 
 
 17
 Under some circumstances, a prosecutor may properly warn witnesses of the potential consequences of their testimony or admonish them that they are required to tell the truth. See United States v. Viera, 839 F.2d 1113 (5th Cir.1988) (en banc); United States v. Riskin, 788 F.2d 1361, 1370 (8th Cir.), cert. denied, 879 U.S. 923 (1986); cf. United States v. Schaflander, 719 F.2d 1024, 1026 (9th Cir.1983) (judge did not improperly intimidate witness when he questioned him to ensure that he was aware of the possible consequences of testifying), cert. denied, 467 U.S. 1216 (1984). Prosecutors, however, engage in misconduct justifying the reversal of a defendant's conviction if their conduct is perceived as more coercive or threatening than advisory. See Webb v. Texas, 409 U.S. 95 (1972); United States v. Lord, 711 F.2d 887 (9th Cir.1983); United States v. Harlan, 539 F.2d 679, 681 (9th Cir.1976), cert. denied, 419 U.S. 742 (1976); Berg v. Morris, 483 F.Supp. 179 (E.D.Cal.1980).
 
 
 18
 In this case, the district court held an extensive evidentiary hearing to determine whether or not Tanner's witnesses had been intimidated, thereby depriving the defendant of his Sixth Amendment right to present truthful testimony in his defense. After observing defendant's witnesses and hearing their testimony on this subject for several days, the district court found that defendant's witnesses may have been planning to lie for him and were dissuaded from doing so, but that they had not been improperly intimidated.
 
 
 19
 Defendant contends that the district court erred in refusing to compel production of the alleged tape, which formed the basis and the justification for the government's action. Defendant correctly argues that the existence and contents of the tape were relevant to the propriety of the government's conduct in approaching and warning defendant's witnesses. Had there been any credible evidence that defendant's witnesses were actually pressured into withholding testimony or providing untruthful testimony as a result of the government's conduct, we would probably remand to permit the district court to weigh the prosecutor's need for confidentiality against the defendant's right to discover evidence relevant to his case, an inquiry in which the district court did not engage.
 
 
 20
 However, in this case defendant's witnesses have never contended that they genuinely did not know anything about Tanner's drug activities, or that exculpatory testimony would have been truthful. The district court expressly found they were not intimidated. Under the circumstances, then, defendant was not entitled to discover the government's tape in order to bolster any claim of prosecutorial misconduct. [T]he district court similarly did not err in excluding evidence aimed at showing that Griffin had intimidated a defense witness in an unrelated case two years earlier.
 
 
 21
 Tanner's contention that the district court erred in denying his motion to continue the evidentiary hearing also fails. The defendant had neither provided any explanation as to why he had been unable to locate or subpoena his intended witness, Donna Brown, nor indicated what evidence Donna Brown was expected to provide that was not cumulative of testimony the court had already heard. More importantly, defendant has never suggested that his guilty plea was obtained because of Donna Brown's expected testimony.
 
 
 22
 Tanner also argues that he should have been allowed to withdraw his guilty plea because he did not have sufficient time to consider, understand, or consult with his attorney regarding his plea, which was therefore not free or voluntary. While defendant did make his decision to plead guilty within a relatively short time frame, there is no indication that any time pressure was applied by the court or the prosecution, or that defendant could not have taken longer to consider his options, had he chosen. During the plea colloquy, the judge thoroughly questioned Tanner regarding his plea, his understanding of the situation, and his willingness to enter into the agreement, and was completely satisfied that Tanner was pleading guilty freely and voluntarily and with full understanding of the significance of the event. At times, Tanner stopped to question the judge, who then explained the point at issue more thoroughly, until Tanner indicated that he understood.
 
 
 23
 Tanner also contends that the district court erred in denying his belated motion for a mental competency examination prior to sentencing. In this case, no issue arose regarding Tanner's competency until the hearing on his motion to withdraw his guilty plea. At that time, defendant's trial attorney stated that Tanner seemed to have difficulty understanding some things, and that while at the time he "got the impression that [Tanner] wasn't [incompetent]," he had since had a "nagging doubt" about that. Although defendant's attorney testified about his doubts regarding defendant's competency on September 23, 1992, the defendant waited until February 24, 1993, the day before his sentencing hearing, to file a motion for a mental competency examination. Particularly given the court's extensive experience with defendant, the court did not err in finding that this motion was frivolous, and filed for purposes of delay. United States v. Bradshaw, 690 F.2d 704 (9th Cir.1982), cert. denied, 463 U.S. 1210 (1983).
 
 
 24
 Finally, defendant contends that there was insufficient evidence to support his guilty plea to Count III of the indictment, which charged defendant with using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1). Denise Thomas, the owner of the apartment where the Intra-Tect 9 was found, testified that she had seen Tanner with the Tect 9 on many occasions, and that he had brought it into her apartment. She also testified that the gun was related to defendant's drug activities. This evidence provided a sufficient factual basis for defendant's plea. See Fed.R.Crim.P. 11(f).
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3