# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY


| | | |
|---|---|---|
| **STATE OF DELAWARE**, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **ID. No. 1312014951** |
| | ) | |
| | ) | |
| **JEROME MADISON** | ) | |

Submitted: February 3, 2015
Decided: March 10, 2015

## OPINION AND ORDER


*Upon Defendant Jerome Madison's Rule 47 Motion,*
**GRANTED, in part.**


*Upon Defendant Jerome Madison's Motion for Recusal,*
*Motion for Removal of Counsel, and Motion to Vacate Judgment/Motion for*
*Judgment of Acquittal*
**DENIED.**


Karin M. Volker, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

James A. Natalie, Jr., Esquire, Woloshin, Lynch, Natalie & Gagne, P.A., Wilmington, Delaware, for Defendant Jerome Madison.

Jerome Madison, II, Howard R. Young Correctional Institution, Wilmington, Delaware.


**WALLACE, J.**

## I. INTRODUCTION

On October 1, 2014, this Court found Defendant Jerome Madison guilty of eleven charges. Mr. Madison and his counsel, James A. Natalie, Jr., Esquire, have had a difficult relationship since prior to trial. Mr. Natalie's pre-trial and post-trial motions to withdraw as counsel were denied, as was Mr. Madison's mid-trial request to terminate Mr. Natalie's representation. Mr. Madison now brings yet another motion to dismiss his counsel. In addition, Mr. Madison seeks my recusal from the case and claims that my previous supervisory relationship with the Deputy Attorney General assigned to this case is grounds to vacate the judgment or for judgment of acquittal. Mr. Madison's most recent application is a Rule 47[1] motion to participate in his defense. Mr. Madison's Rule 47 request is **GRANTED** only to the limited extent that it permits the Court to address the removal of counsel and recusal issues that permeate his post-trial complaints. All of Mr. Madison's motions raising those claims are **DENIED** for the reasons set forth below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Madison was arrested on December 24, 2013, and later charged with: three counts of Rape in the First Degree, two counts of Kidnapping in the Second

---

[1] Del. Super. Ct. Crim. R. 47 ("The court will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense.").

Degree, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), two counts of Assault in the Second Degree, and two counts of Terroristic Threatening. The Public Defender represented Mr. Madison at his January 10, 2014 preliminary hearing and February 18, 2014 arraignment.

Mr. Madison then retained Mr. Natalie to represent him, and Mr. Natalie entered his appearance on March 21, 2014. Mr. Natalie represented Mr. Madison at his March 24, 2014 and June 16, 2014 case reviews.

Mr. Madison's case was first assigned to a different judge on April 21, 2014.[2] And his trial was initially scheduled for June 24, 2014. At Mr. Madison's June 16, 2014 final case review, Mr. Natalie mentioned a potential mental illness defense and a suppression motion. Counsel was given a week to file any pre-trial motions.

On June 23, 2014, at Mr. Madison's insistence, Mr. Natalie requested a continuance and filed four motions: 1) a motion for reduction of bail; 2) a motion to suppress; 3) a motion for a full psychological examination; and 4) a motion to withdraw as counsel.[3] The motions were not docketed until June 24, just before trial was scheduled to start. The then-assigned judge denied all four motions in a

---

[2]     *See* Order of Assignment of Case, *State v. Jerome Madison*, ID. No. 1312014951 (Del. Super. Ct. Apr. 15, 2014) (D.I. 9).

[3]     *See* Continuance Request Form, *State v. Jerome Madison*, ID. No. 1312014951 (Del. Super. Ct. June 23, 2014) (D.I. 22).

3

June 27, 2014 order. That order briefly addressed the merits of Mr. Natalie's request to withdraw as counsel, noting that the judge appreciated that Mr. Natalie had "not been paid recently," and that Mr. Madison had "become obstreperous" and possibly intended to testify untruthfully.[4] But the motion was denied because "[d]ifficult and dishonest clients are nothing new to seasoned defense attorneys."[5]

The Court held a status hearing on July 1, 2014 for an "airing of grievances,"[6] at which the Court further addressed the four motions. At that hearing, Mr. Madison expressed that he was "not 100 hundred percent comfortable" with Mr. Natalie continuing to represent him, but that he did not want to represent himself. Mr. Madison ultimately decided that he wanted Mr. Natalie to represent him at trial.

This judge was assigned on September 23, 2014, when the assigned judge became unavailable to preside over Mr. Madison's trial. On that date, the Court informed Mr. Madison wished to waive his right to a jury trial and proceed with a bench trial. Mr. Madison engaged in the required colloquy, and the Court found that each party voluntarily waived its jury trial right, both verbally and in writing.[7]

---

[4]    *State v. Madison*, 2014 WL 3706308, at *2 (Del. Super. Ct. June 27, 2014).

[5]    *Id.*

[6]    *Id.*

[7]    *See* Stipulation of Waiver of Jury, *State v. Jerome Madison*, ID. No. 1312014951 (Del. Super. Ct. Sept. 23, 2014) (D.I. 41). *See also* Del. Super. Ct. Crim. R. 23(a).

4

Trial began on September 24, 2014. After the prosecution had already presented four witnesses, Mr. Madison informed the Court that he no longer wished to be represented by Mr. Natalie and was interested in any then-available plea agreement the State would offer. Because Mr. Madison stated he had no substitute counsel and was not prepared to go forward by himself, his mid-trial request to terminate Mr. Natalie's representation was denied. The Court then took a recess to allow the parties to engage in plea negotiations. When trial resumed, Mr. Natalie had obtained for Mr. Madison a revised plea offer.[8]

During the ensuing plea colloquy, Mr. Madison told the Court that he could not admit guilt to the rape allegations, although he did after some encouragement from Mr. Natalie. He was then queried on his plea to the home invasion count. Again, Mr. Madison resisted answering. He then said that his lawyer advised him as to a different charge. Without question – when accounting for the answers he would give, his complaints of insufficient counsel, and his demeanor throughout the attempted plea process – Mr. Madison was not knowingly, intelligently, and voluntarily accepting the charges in the plea agreement and relinquishing his right to trial. The Court, therefore, could not accept the plea agreement and the trial proceedings resumed.

---

[8] *See* Ct. Trial Ex. No. 1.

Trial concluded the next day, September 25, 2014. And the Court recessed for several days to consider the evidence and deliberate on its verdict. On October 1, 2015, based on careful consideration of all the parties' evidence and witnesses, and the applicable law, the Court found Mr. Madison guilty of eleven crimes beyond a reasonable doubt: Rape First Degree, Attempted Rape First Degree, Unlawful Sexual Contact in the First Degree, Home Invasion, PDWDCF, two counts of Kidnapping First Degree, Assault Third Degree, Assault Second Degree, and two counts of Terroristic Threatening. Mr. Madison is scheduled to be sentenced on March 13, 2015.

After the trial, Mr. Madison continued to correspond with Mr. Natalie, demanding that he file several motions, including a motion to set aside the verdict, a motion to vacate the judgment or for judgment of acquittal, and a motion for Mr. Natalie to withdraw as counsel.[9] Mr. Madison's correspondence contains allegations of, *inter alia*, an appearance of impropriety based on my years-ago supervision of the trial prosecutrix, and Mr. Natalie's alleged ineffective assistance at trial.

On October 21, 2014, Mr. Natalie filed his second motion to withdraw as counsel, citing the above correspondence. At a November 5, 2014 hearing, the Court denied Mr. Natalie's motion, without prejudice; Mr. Natalie could withdraw

---

[9]   *See* D.I. # 46, *State v. Madison*, I.D. No. 1312014951 (Del. Super. Ct. Oct. 15, 2014).

as counsel if, and only if, Mr. Madison secured substitute counsel who was prepared to take over representation before, and without causing further delay of, sentencing.[10]

Since that motion, Mr. Madison has docketed a number of *pro se* filings. On November 13, 2014 he docketed a motion to recuse me as judge, and a motion to dismiss Mr. Natalie as counsel.[11] Mr. Madison also wrote to the Court in January 2015, where he mentioned having submitted the recusal motion and the motion to remove counsel; he also mentioned applications – a Rule 47 motion and a motion to vacate judgment/motion for judgment of acquittal – that he had not yet made.[12] On February 3, 2015, Mr. Madison docketed a motion to vacate judgment/motion for judgment of acquittal and a Rule 47 motion to participate in his defense.[13] Mr. Madison's sole argument in his motion to vacate judgment/motion for judgment of acquittal is that this judge should have recused himself from the trial.

---

[10] *See* Order Denying Counsel's Motion to Withdraw, *State v. Jerome Madison*, ID. No. 1312014951 (Del. Super. Ct. Nov. 5, 2014) (D.I. 47).

[11] *See* D.I. # 48 and # 49, *State v. Madison*, I.D. No. 1312014951 (Del. Super. Ct. Nov. 13, 2014).

[12] *See* D.I. # 53, *State v. Madison*, I.D. No. 1312014951 (Del. Super. Ct. Jan. 29, 2014).

[13] *See* D.I. # 54 and # 55, *State v. Madison*, I.D. No. 1312014951 (Del. Super. Ct. Feb. 3, 2015).

## III. DISCUSSION

Mr. Madison's recent motion to participate and his numerous and repetitive post-trial entreaties devolve to two core grievances: 1) that I should have recused myself from his trial; and 2) that Mr. Natalie should be dismissed as counsel. The Court will address Mr. Madison's Rule 47 motion first.

Mr. Madison asks this Court to allow him to participate with Mr. Natalie in his defense until Mr. Natalie is permitted to withdraw. The Court may not consider a represented defendant's *pro se* motions unless the defendant is granted permission to participate with counsel in his defense under Superior Court Criminal Rule 47.[14] This Court has, however, considered *pro se* filings under Rule 47 in rare and particular circumstances.[15] Here, given the procedural posture of this case and the issues involved – this judge's and Mr. Natalie's continued

---

[14]     Del. Super. Ct. Crim. R. 47; *In re Johnson*, 2013 WL 2405293, at *1 n.2 (Del. May 30, 2013) (Superior Court may not consider represented defendant's *pro se* motions unless defendant is granted permission to participate with counsel in his defense). Because of possible confusion or delay, defendants should be permitted to act as co-counsel only in exceptional situations. *See Briscoe v. State*, 606 A.2d 103, 107 n.1 (Del. 1992) (citing *United States v. Williams*, 534 F.2d 119, 123 (8th Cir. 1976)). Defendants who are not permitted to act as co-counsel must decide to continue with his or her current counsel or proceed *pro se*. *See id.* at 107. Mr. Madison has never wanted to do the latter.

[15]     *See State v. Lewis*, 2014 WL 3706551, at *1 (Del. Super. Ct. June 17, 2014) (acknowledging represented defendant's *pro se* motions were filed out of order but addressing them because they "bear mention"); *State v. Stallings*, 2014 WL 4948261, at *1 (Del. Super. Ct. Aug. 25, 2014) (addressing *pro se* filings where "submissions suggest it is better not to ignore [defendant's] DIY filing").

participation – the Court grants Mr. Madison's Rule 47 motion only so as to allow the Court to resolve his judicial recusal and removal-of-counsel claims.

## A. Recusal Based Solely on a Previous Supervisory Relationship Is Unwarranted.

Mr. Madison contends I should recuse myself because I supervised the trial prosecutrix at some point during my time with the Delaware Department of Justice ("DelDOJ") before coming to the Court in January of 2013.[16] Citing only a provision of the judicial conduct code, he claims this past professional relationship raises an appearance of impropriety.

Rule 2.11 of the Delaware Judges' Code of Judicial Conduct describes the circumstances in which a judge must recuse him- or herself from trial.[17] Judges may not preside over matters involving a law firm or lawyer acting as counsel where the judge was associated in the practice of law within the preceding year.[18] The Rule also includes broad "catchall" language requiring a judge to disqualify

---

[16] I practiced in the DelDOJ for nearly twenty-four years. Specific to this claim, I was the State's Chief of Appeals from 2008 to 2013, was Chief Prosecutor for New Castle County from 2005 to 2008, and served in various supervisory and "line prosecutor" roles from 1989 to 2005.

[17] *See generally* DEL. JUDGES' CODE OF JUDICIAL CONDUCT CANON 2, Rule 2.11 (listing circumstances in which a judge "should" disqualify himself or herself from a proceeding).

[18] *Id.* at 2.11(A)(4)(a) ("A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge was associated in the practice of law within the preceding year with a law firm or lawyer acting as counsel in the proceeding."). By long custom, this Court has analogized the DelDOJ to a "law firm." And so for one year after assuming the bench, I presided over absolutely no criminal matters that came before the Superior Court; nor did I preside over any civil actions in which the State was a party.

himself or herself in any proceeding in which "the judge's impartiality might reasonably be questioned."[19]

A judge considering whether his or her impartiality could reasonably be questioned must apply the *Los v. Los* two-step analysis:

> First, he must, as a matter of subjective belief, be satisfied that he can proceed to hear the cause free of bias or prejudice concerning that party. Second, even if the judge believes that he has no bias, situations may arise where, actual bias aside, there is the appearance of bias sufficient to cause doubt as to the judge's partiality.[20]

The judge must also consider the "duty to sit"[21] and disqualify himself or herself only if genuinely convinced of the need for recusal.[22]

---

[19]     *Id.* at 2.11(A).

[20]     *Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991) (promulgating two-step analysis to determine if a personal bias or prejudice requires judicial recusal); *see Butler v. State*, 95 A.3d 21, 40 (Del. 2014) (judge is required to undertake *Los* two-part test when addressing a claim of personal bias or prejudice). *See also State v. Wright*, 2014 WL 7465795, at *3 (Del. Super. Ct. Dec. 16, 2014) (extending *Los* test to the general catchall provision in Rule 2.11).

[21]     *State v. Desmond*, 2011 WL 91984, at *8-12 (Del. Super. Ct. Jan. 5, 2011) (describing history of "duty to sit" doctrine in Delaware).

[22]     *Id.* at *12 ("Delaware's approach reflects an obvious tenet: that there is a duty incumbent on judges 'not to unreasonably burden fellow judges by recusing in response to a weak argument for disqualification.'"); *see Edelstein v. Goldstein*, 2011 WL 2791270, at *3 (Del. Super. Ct. July 13, 2011) (discussing judges' duties to decide and to sit); *see also Reeder v. Delaware Dept. of Ins.*, 2006 WL 510067, at *17 (Del. Ch. Feb. 24, 2006) ("The [Delaware] Supreme Court also has noted that there is a compelling policy reason for a judge not to disqualify himself or herself unnecessarily, and in the absence of genuine bias, a litigant should not be permitted to 'judge shop.' . . . [I]t is also recognized that judges who too lightly recuse shirk their official responsibilities, imposing unreasonable demands on their colleagues to do their work and risking the untimely processing of cases.").

First, after a careful examination of the record, I am satisfied, as a matter of subjective belief, that I could and did proceed to hear this matter free of bias or prejudice concerning Mr. Madison. Prior to my assignment of this trial in September 2014, I was wholly unfamiliar with Mr. Madison, the other parties, and the allegations involved here. And, for the reasons explained below, under these circumstances no objective observer would entertain reasonable questions about my impartiality.[23]

Absent involvement or a direct supervisory role in the instant proceedings, there is no *per se* rule requiring disqualification in a case where a judge's former subordinate appears as counsel.[24] As one court noted, "it is unreasonable to question the impartiality of a judge simply because many years ago he was a colleague and supervisor to an attorney who is presently involved in the litigation before him."[25] A judge who formerly served as a prosecutor may preside "over

---

[23] *See generally* RICHARD E. FLAMM, JUDICIAL DISQUALIFICATIONS: RECUSAL AND DISQUALIFICATIONS OF JUDGES § 8.9 at 225-29 (2d ed. 2007).

[24] *See United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988) (judge is not required to recuse himself or herself from cases tried by U.S. Attorney's Office if not previously involved in case while employed with office). *Cf. Edelstein*, 2011 WL 2791270, at *4 (judge should have disqualified herself because the judge "served in governmental employment (as a Supervisor of the Chief Deputy) that arguably directly concerned the proceedings and which appear to be the source of Defendant's (unpaid) legal fees" – and so, an objective observer might question the judge's impartiality).

[25] *Cherokee Nation of Okla. v. U.S.*, 26 Cl. Ct. 215, 219 (1992); *see also United States v. Occhipinti*, 851 F. Supp. 523, 527 (S.D.N.Y. 1993) (finding that judge is not required to disqualify him or herself if former law clerk appears before the court).

11

cases involving former colleagues who are still prosecutors, provided [the judge] had no involvement in the cases while [he or she] was a prosecutor."[26] The appearance of a judge's former law firm associate or colleague does not automatically raise an inference of partiality,[27] nor does the appearance of a judge's former subordinate or colleague in a government law office.[28]

Viewing the circumstances as a reasonable person with knowledge of all salient facts would, I find there is no objective appearance of partiality here.[29] Applying the strictest possible interpretation of Delaware's Rule 2.11, I did not preside over any matters in which the State of Delaware was a party (and, therefore, the DelDOJ was counsel) for one year after coming to the bench. Now

---

[26] *United States v. Oluwafemi*, 883 F.Supp. 885, 892-93 (E.D.N.Y. 1995) (applying the ABA Code of Judicial Conduct and noting the commentary to the rule does not consider government attorneys "associated" in the same manner as lawyers in a firm). Delaware's Code of Judicial Conduct has not adopted this comment, however. *See* DEL. JUDGES' CODE OF JUDICIAL CONDUCT CANON 2, Rule 2.11(A)(4)(a). Thus, there is this Court's tradition of a one-year recusal period. *See supra* note 11.

[27] *See United States v. Tanner*, 24 F.3d 252 (9th Cir. 1994), *as amended on denial of reh'g* (Aug. 8, 1994) (finding "the mere fact of a prior supervisory relationship does not disqualify a judge from presiding over a case in which a former employee is an attorney"); *Smith v. Pepsico, Inc.*, 434 F. Supp. 524, 525 (S.D. Fla. 1977) (where trial judge was former law partner of a firm appearing before court, recusal not required). *Cf. United States v. Tompkins*, 2014 WL 4802867, at *2 (A.F. Ct. Crim. App. Aug. 18, 2014) (opinion of court on reconsideration) (military judge was not required to recuse himself based on prior supervisory relationship with the detailed trial counsel); *United States v. Davis*, 20 M.J. 61, 64 (C.M.A. 1985) (no partiality in military court context where defense counsel was investigating officer's subordinate).

[28] *See also State v. Small*, 693 So.2d 180 (La. Ct. App. 1997) ("The coincidental presence of a judge on the criminal bench with a former co-worker as the prosecuting attorney is, without more, insufficient to require the judge's recusal.").

[29] *Compare Fritzinger v. State*, 10 A.3d 603, 613 (Del. 2010); *Edelstein*, 2011 WL 2791270, at *3.

that that year has passed, there is no presumptive conflict with any prosecuting attorney appearing before me.

Moreover, because the crimes alleged here did not occur until December 2013, I was not, and could not possibly have been, involved in this case in any way prior to coming to the bench – either directly or in a supervisory capacity. Although I did, at one time, supervise the trial prosecutrix – from 2000 to 2005 as her direct supervisor and from 2005 to 2008 more indirectly as Chief Prosecutor of New Castle County – we did not and could not have worked together on Mr. Madison's case. The events giving rise to his charges took place almost a year after I took the bench. Having no subjective belief of bias, and given the lack of an objective appearance of partiality, I find that I need not recuse myself from Mr. Madison's case solely because I once supervised the prosecutrix in his case.

Mr. Madison's motion to recuse me, and his motion to vacate the judgment or for judgment of acquittal (which is based on the allegation that I should have recused myself) are therefore **DENIED**.

### B. Mr. Natalie Will Not Be Removed as Counsel Without Proper Substitution of Counsel at an Appropriate Point in the Proceedings.

The disquiet between Mr. Madison and Mr. Natalie began well prior to trial's start in September, 2014. Mr. Natalie attempted to withdraw as counsel

earlier on, which the then-assigned judge denied in his June 27, 2014 ruling[30] and expounded upon at the "grievance" hearing on July 1, 2014. One day into trial, Mr. Madison attempted to have Mr. Natalie cease representing him. The Court denied that request, given its disruptive nature and because Mr. Madison stated he was unprepared to proceed with the trial *pro se*. Mr. Natalie then filed a post-trial motion to withdraw as counsel, which the Court denied for the same reasons. The Court noted then that Mr. Madison could proceed either with Mr. Natalie or *pro se*, unless Mr. Madison secured substitute counsel. With no substitute counsel proffered at any point, Mr. Madison now seeks, once again, to dismiss Mr. Natalie as his counsel prior to his sentencing.

As this Court has previously ruled both during trial and upon Mr. Natalie's post-trial motion to withdraw, Mr. Madison may either discharge his counsel and proceed *pro se* or continue with substitute counsel. As Mr. Madison has made it clear at all relevant times that he does not wish to proceed *pro se*, his options have been to go forward to sentencing with Mr. Natalie or to obtain substitute counsel prepared to proceed in a timely manner on his behalf.[31] No such substitute counsel has ever been secured, however.

---

[30] *State v. Madison*, 2014 WL 3706308, at *2 (Del. Super. Ct. June 27, 2014).

[31] *See Carletti v. State*, 2008 WL 5077746, at *5-6 (Del. Dec. 3, 2008) (other interests may outweigh defendant's request for delay or disruption to obtain new counsel of his choosing).

14

Additionally, to reach the opposite conclusion and grant Mr. Madison's removal of counsel motion either at trial or now would be to undermine the reasoned decision made by a previous judge in this case. A successor judge overruling a decision of a predecessor judge of the same Court is strongly disfavored.[32] Such a situation is guided by the doctrine of the law of the case so as to promote "fundamental fairness and . . . judicial efficiency."[33] Unless there are demonstrated changed or extraordinary circumstances warranting a reconsideration of a decision that was clearly wrong,[34] the Court will not revisit a prior ruling. This ensures that the parties are not "entrapped by varying philosophies of different judges of the same Court in the case."[35]

---

[32] *Frank G.W. v. Carol M.W.*, 457 A.2d 715, 718 (Del. 1983) ("[W]e want to emphasize that we take a dim view of a successor judge in a single case overruling a decision of his predecessor."). It is well-settled that once a decision is rendered by the same court that decision should stand. *May v. Bigmar, Inc*. 838 A.2d 285, n.8 (Del. Ch. 2003) ("The 'law of the case' doctrine requires that issues already decided by the same court should be adopted without relitigation, and once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears.") (citation omitted) (internal quotation marks omitted).

[33] *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994); *Frank G.W.*, 457 A.2d at 719 ("Considerations of courtesy and comity are particularly relevant in Delaware where it is not unusual for our Superior Court to have various judges involved at different stages of protracted cases.").

[34] *Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original); *Frank G.W.*, 457 A.2d at 719 (citing *Wilmington Med. Ctr., Inc. v. Coleman*, 298 A.2d 320, 322 (Del. Super. Ct. 1972)) (a successor judge should only depart from the general rule "in extraordinary circumstances").

[35] *Frank G.W.*, 457 A.2d at 719.

The originally assigned judge found no merit to Mr. Natalie's first motion to withdraw as counsel, and no changed or extraordinary circumstances have arisen since that warrant a change in that ruling. While the relationship between client and counsel here may have been strained – in part, due to the blunt advice grounded in reality that Mr. Natalie had to deliver, but that Mr. Madison did not want to hear – there is no evidence that Mr. Natalie failed to put forth the efforts expected of effective counsel. "While a defendant has a right to counsel, he does not have a right to counsel who will not disagree with him about how best to proceed with his case."[36] That is all that we have now, and have always had in this case.

There are, therefore, no extraordinary circumstances present to either allow or require Mr. Natalie's withdrawal as counsel now. Mr. Natalie may, under this and our Supreme Courts' normal procedures, seek substitution after sentencing and discharge of his duties under Supreme Court Rule 26.[37] Mr. Madison's motion to dismiss Mr. Natalie as counsel now, however, is presently **DENIED.**

---

[36] *Bultron v. State*, 897 A.2d 758, 763 (Del. 2006). *See also Morris v. Slappy*, 461 U.S. 1, 3-4 (1983)(citations omitted) (The United States Supreme Court in describing the Sixth Amendment right to counsel has held that it does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship.'").

[37] *See generally*, Del. Super. Ct. Crim. R. 44 (defendant to be represented from initial appearance through appeal); Del. Supr. Ct. Crim. R. 26(a) (trial counsel has continuing obligation through docketing of direct appeal).

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS, in part,** Mr. Madison the limited permission to participate in his defense under Rule 47 so that his recusal and removal arguments may be considered. Mr. Madison's recusal motion (and motion to vacate the judgment/motion for judgment of acquittal which is grounded on the same basis) is **DENIED.** The bare assertion that I once supervised his trial prosecutrix at the DelDOJ – which has no relation to Mr. Madison or his case – is no ground for recusal. Finally, Mr. Madison's motion to dismiss counsel is **DENIED** as he is unprepared to proceed *pro se* and has no substitute counsel.

**IT IS SO ORDERED.**


*/s/ Paul R. Wallace*
**PAUL R. WALLACE, JUDGE**

Original to Prothonotary

17